No. 94-414

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

RICHARD L. GRAVES,

       Defendant and Appellant.

FILED

AUG 08 1995

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       Anne H. Watson, Watson & Watson, Bozeman, Montana

       For Respondent:

       Hon. Joseph P. Mazurek, Attorney General; Cregg W.
Coughlin, Assistant Attorney General, Helena,
Montana

       Mike Salvagni, County Attorney; Martin Lambert,
Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:  May 12, 1995

Decided:  August 8, 1995

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a jury verdict in the Eighteenth Judicial District, Gallatin County and the District Court's Sentence and Judgment. We affirm.

Five issues were raised on appeal:

I. Did sufficient evidence exist to support the jury verdict?

II. Did the District Court err in admitting into evidence the substance of a 911 call?

III. Did the District Court err in allowing the State to use defendant's silence, in reference to consensual sexual intercourse, during his interrogation by the West Yellowstone police as evidence against defendant?

IV. Did the District Court err in declining to review testimony with the jury at the jury's request?

V. Did the District Court err in defendant's sentencing?

In May of 3.991, complainant, Betsy Baker (Betsy), and her boyfriend moved to West Yellowstone and worked at various jobs. They lived in a small trailer behind the Wagon Wheel Apartments.

Betsy testified that, on the evening of August 24, 1991, she and her boyfriend ate dinner and then consumed several drinks at a local bar. Ultimately, the boyfriend was found to be driving while under the influence (DUI) and arrested. Betsy testified she did not know what happened to her boyfriend after he got out of the truck. She was advised by onlookers that he had been arrested.

Both defendant and Betsy testified to the fact that defendant approached Betsy and offered to drive her truck home. Betsy

2

agreed.   Defendant **walked with Betsy to her landlords' (the** Hitzlers) house.   Defendant did not enter the Hitzlers' house but remained outside searching for keys Betsy had dropped on the way to the house.   Betsy testified that she discussed with the **Hitzlers** her concerns about her boyfriend's arrest.   The Hitzlers testified Betsy was clearly drunk at the time.

Betsy and defendant testified, as Betsy left the Hitzlers' house, defendant pulled up in his own car, told Betsy he had found her keys, and offered her a ride back to the trailer.   Defendant followed Betsy into her trailer.   Betsy testified that she allowed defendant to stay but told him he could sleep either on the bed or on the couch and she would stay on the other because they were not sleeping together.   Betsy testified that defendant told her that was fine.

Betsy then testified she was awakened when she felt someone penetrating her vagina from behind her.   She said she "dove off of the bed" and yelled at defendant to "just get the fuck out of here."   Betsy testified defendant told her to "hold on" and calm down, but she kept yelling for him to get out.   Before he left, Betsy said she asked him, "Did we make love?"   Defendant replied, "I didn't mean to hurt you," then ran out the door.   Betsy said she wrapped a blanket around herself and sat on the floor crying. At about 5:00 a.m., people who lived close by testified that they heard persistent crying.

Betsy testified that shortly after defendant left, someone knocked on her door and she asked him to call the police.   A West

3

Yellowstone police dispatcher said someone called 911 on the night in question and told the dispatcher a woman in a trailer behind the Wagon Wheel was screaming, could hardly speak, and thought she may have been raped. The caller would not give his name nor his location. Later, it was discovered he was a seasonal worker and he was not found nor called as a witness.

The police officer (Officer Burns) testified that, as he approached the trailer, he heard a woman crying loudly. He knocked on the door and saw Betsy on the floor holding a blanket tightly and crying hysterically. He said he recognized her from the earlier DUI stop and arrest. After Betsy calmed down, she told Officer Burns that a man offered to drive the truck home after the arrest and that she had been raped. Officer Burns locked the trailer and transported Betsy to the police department.

Officer Burns located defendant based on Betsy's description of defendant's car. Officer Burns said he asked defendant what had happened that night and was told by defendant, "What, nothing happened." When Officer Burns told defendant he knew something happened, he testified defendant admitted that he was with a girl and had given her a ride home but that was all. Officer Burns said he again told defendant there was more that had happened. Defendant then told Officer Burns he approached the girl after her boyfriend was arrested, offered his assistance, and drove her pickup to her trailer. Defendant also told Officer Burns about Betsy losing her keys and going to visit the other people.

4

Officer Burns said defendant told him that when he and Betsy got to the trailer, she offered to let him sleep in the bed, but that he declined, telling Betsy, "No, that's your bed. I'll sleep on the couch." Defendant told Officer Burns that Betsy was with him on the bed and she began touching him. Defendant claimed they fell asleep and that "[n]othing really happened after that." Officer Burns asked defendant what happened in the bed; but he said defendant became evasive. Officer Burns then advised defendant of his rights and the interview ended.

On August 25, 1991, defendant was booked and detained at the West Yellowstone, Montana, police station. Betsy and defendant were both taken to Bozeman for a rape examination. Two nonmotile sperm, biologically consistent with defendant, were found in Betsy. Defendant was released after providing police with his permanent address, telephone number, and social security number. On October 15, 1993, defendant was arrested for the offense of sexual intercourse without consent in violation of § 45-5-503, MCA.

Defendant was tried before a jury on March 7-10, 1994.' He testified on his own behalf at trial. He claimed that, as he drove Betsy home, she sat directly next to him in the truck and placed her hand on his leg. He also claimed she gave him a hug and kissed him affectionately when he said he would go look for her keys. Defendant then testified as to how Betsy and he had finally gone to sleep together and that he awoke when Betsy's hand was fondling his groin area. He testified that, after about ten or fifteen minutes of foreplay, intercourse took place.

He alleged, afterwards, she caressed his face with her fingers, but suddenly stopped when she felt his mustache. He claimed Betsy got up, went to the bathroom, then came out and asked him, "Can I ask you a question?" Defendant told her, "Well, sure." Defendant then testified that Betsy asked, "Did we just make love?" He said "Well, of course we did." Defendant claimed Betsy got a couple of tears in her eyes, then calmly suggested he should leave. Defendant testified that he got dressed, returned to his friend's apartment, and went to sleep.

On March 10, 1994, the jury found defendant guilty of Sexual Intercourse Without Consent. He was sentenced on June 8, 1994, to twenty years' imprisonment with five years suspended. For purposes of parole eligibility, defendant was designated a dangerous offender. From the final judgment, defendant appeals.

## Issue I

Did sufficient evidence exist to support the jury verdict?

Section 45-5-503(1), MCA, states "[a] person who knowingly has sexual intercourse without consent with another person commits the offense of sexual intercourse without consent. . . ."

Defendant claims the State failed to prove all of the necessary elements of the alleged crime beyond a reasonable doubt. Defendant admits he knowingly had sexual intercourse with Betsy. However, defendant argues he was led to believe Betsy fully consented to such intercourse.

"Without consent" as used in § 45-5-503, MCA, is defined by § 45-5-501(1), MCA. Section 45-5-501(1), MCA states:

```
(1) . the term "without consent" means:

    (b) the victim is incapable of consent because he
is:
    (i) mentally defective or incapacitated;
    (ii) physically helpless;
. . .
```

Defendant argues the State failed to prove Betsy was incapable of appreciating or controlling her own conduct at the time of sexual intercourse or even earlier the previous evening. Defendant restates various testimony alleging Betsy made numerous thoughtful decisions while in the company of defendant. From this testimony, defendant concludes Betsy clearly possessed the capacity to consent, and to say "no" to sexual intercourse even though later she regretted that course of action.

Defendant further argues the evidence does not support the State's claim that Betsy was physically helpless, and therefore incapable of consenting. Section 45-2-101(51), MCA, states "'[p]hysically helpless' means that a person is unconscious or is otherwise physically unable to communicate unwillingness to act." Defendant contends this Court has never determined "sleep" to be physical helplessness and should not set such a precedent here. In any event, defendant alleges Betsy was clearly not asleep because she was physically active during intercourse.

The State contends defendant's arguments concerning Betsy's capacity to consent or say "no" has nothing to do with the facts of this case. The State argues its case is in no way based upon a theory that Betsy was too drunk to make a wise choice about having sex with defendant. The State contends the evidence established

7

that Betsy was "passed out"--in other words, unconscious. Betsy testified she told defendant he could sleep in the bed or on the couch, but they would not be sleeping together. Betsy then passed out on the bed, and defendant removed her pants and underwear and took advantage of her unconscious state. The State concludes there was sufficient evidence in the record to show Betsy was physically helpless and could not have consented; therefore, the jury correctly found defendant guilty of sexual intercourse without consent pursuant to § 45-5-503, MCA.

"In reviewing a jury verdict in a criminal case, the proper inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Citations omitted.)" State v. Little (1993), 260 Mont. 460, 477, 861 P.2d 154, 165. In the light most favorable to the prosecution, the record fully supports the State's claim that Betsy passed out the night of August 24, 1991; and that defendant, knowing Betsy to be unconscious, penetrated her vagina without her consent.

Defendant's contention, that no evidence exists as to Betsy's mental incapacitation, physical helplessness, or defendant's knowledge of such at the time of sexual intercourse, is incorrect. Betsy testified she had laid on her bed fully clothed that night and "passed out." She then testified she was awaken by someone penetrating her vagina. In Little, we stated "[w]e have held repeatedly that convictions for sexual intercourse without consent

8

and sexual assault are sustainable based entirely on the uncorroborated testimony of the victim.  (Citations omitted.) " Little, 861 P.2d at 165.  Here, we have further testimony from both the Hitzlers and Officer Burns that Betsy was obviously under the influence of alcohol on the night in question.

"The credibility of witnesses and the weight to be assigned to their testimony are to be determined by the trier of fact, and disputed questions of fact and credibility will not be disturbed on appeal."  State v. Moreno (1990),  241 Mont. 359, 361, 787 P.2d 334,  336.  Additionally, in State v. Losson (1993), 262 Mont. 342, 350, 865 P.2d 255, 260, we stated, "The jury decides the facts and who to believe."

We conclude, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  We therefore hold sufficient evidence existed to support the jury verdict.

Issue II

Did the District Court err in admitting into evidence the substance of a 911 call?

In State v. Hall (1990), 244 Mont. 161, 169, 797 P.2d 183, 188, we stated "[i]t is well established that the District Court has latitude of discretion in passing on the admissibility of evidence. [Citations omitted]. The District Court's determination of the admissibility of evidence is subject to review only for abuse of discretion.  [Citations omitted]."

The District court permitted west Yellowstone Police Dispatcher Helene Rightenour to testify regarding the contents of the emergency 911 telephone call she received on the morning of August 25, 1991. Rightenour testified:

> It was a male caller and he said that there was a woman screaming at 421 Gibbon at a little trailer behind the Wagon Wheel Apartments. There was a truck parked out front that had two bicycles on the top. And he had gone over there and the woman was hardly able to speak, but she asked him to call the police, that she thought she might have been raped.

At trial, defendant objected to the District Court allowing the dispatcher to testify as to the substance of the call. Defendant argues the testimony consisted of prejudicially harmful descriptions by the dispatcher of the caller's description of Betsy's behavior and requests. Defendant contends it was double hearsay, and doubly unreliable.

Rule 801(c), M.R.Evid., defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Defendant argues the present-sense impression exception to the hearsay rule (Rule 803(1), M.R.Evid.) does not apply because the dispatcher was too far removed from Betsy to testify as to her present-sense impression. Defendant further argues the excited utterance exception does not apply because the dispatcher is not relating an event or condition, but is testifying to the caller's description of the event. Defendant concludes none of these exceptions apply. Thus, he contends the District Court abused its

10

discretion in allowing the prejudicial testimony of the 911 caller as evidence.

The State argues "double hearsay" is not per se inadmissible. Rule 805, M.R.Evid., provides hearsay within hearsay is not excluded under the hearsay rule "if each part of a combined statement conforms with an exception to the hearsay rule provided in these rules." The State asserts the caller's statement was not hearsay, under Rule 801(c), M.R.Evid., because it was not offered to prove the truth of the matters asserted. The caller's statement was offered to prove the time of the victim's allegation of rape and the reason the police officer arrived at her trailer at 5:11 a.m. We have closely examined the entire record in this case, however, and cannot find any support for the State's statement in that regard. The prosecutor did not contend before the District Court that the dispatcher's testimony regarding the contents of the 911 call was not hearsay because it was merely being offered to prove the time of the victim's allegation of rape and the reason for the officer being sent to her trailer. To the contrary, the prosecutor argued that the testimony was admissible under exceptions to the hearsay rule, thereby implicitly conceding that the testimony washearsay. Moreover, it was not on that basis that the trial court allowed the testimony. The State's argument that the testimony was not hearsay is being raised for the first time on appeal; therefore, we will not address that argument further.

The State then argues that Betsy's statements to the caller fit within several exceptions to the hearsay rule. Betsy was

crying hysterically, asked for the police and claimed she thought she had been raped. Her statements reflected an excited utterance, her present-sense impression, and her then existing state of mind, emotion, sensation, and physical condition--all within the hearsay exclusion exceptions under Rule 803, M.R.Evid.

While we concur with the State's statement that double hearsay is not per se inadmissible, the double hearsay rule does not apply here. The record does not support the State's contention that the caller's statement was admissible because it was not hearsay and the police dispatcher was too far removed to testify as to what Betsy said to the 911 caller. The 911 caller is the one who witnessed Betty's excited utterance, and her then existing state of mind, emotion, sensation, and physical condition. Therefore, the caller was the only one who could testify to what Betsy said and to his present-sense impression of her when she made the statement.

We hold the District Court erred in admitting into evidence the substance of the 911 call. However, we have stated "[t]he admission of improper evidence is not grounds for reversal unless there is a reasonable possibility that the evidence may have contributed to the conviction. [Citation omitted] ." State v. Matt (1991), 249 Mont. 136, 145, 814 P.2d 52, 58. All of the basic elements--that Betsy was screaming and had asked the caller to call the police because she thought she had been raped--were established without question by other testimony properly admitted at trial. As a result, while the admission of the testimony was not proper, we

12

conclude it is not reversible error because it did not contribute to the conviction.

We hold that the admission into evidence of the substance of the 911 call was harmless error under these facts.

## Issue III

Did the District Court err in allowing the State to use defendant's silence, in reference to consensual sexual intercourse, during his interrogation by the West Yellowstone police as evidence against defendant?

Defendant argues the State's improper comment on defendant's right to remain silent solemnizes the silence into evidence against defendant in direct violation of his Fifth and Fourteenth Amendment rights under the United States Constitution. Defendant did not waive his Miranda rights, thereby assuming he had the right to remain silent under the Fifth Amendment.

Defendant alleges statements referencing his silence did not distinguish between post- and pre-Miranda warnings. Thus, he asserts these statements, in their entirety, were improper under Doyle v. Ohio (1976), 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240, where we held "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment."

The State contends defendant did not establish a Fifth Amendment nor a Fourteenth Amendment violation. The State stresses the fact defendant was not silent. He voluntarily gave statements

13

to Officer Burns.   The State believes  it properly used those statements through careful cross-examination to expose defendant's false testimony when he took the witness stand and gave a very different account of the events leading to and during sexual intercourse.

We agree with the State's contention.   In this case, defendant was cross-examined on statements he voluntarily made to Officer Burns prior to his arrest and how his testimony at trial conflicted with those statements.   The fact that defendant's statements did not include a reference to consensual sexual intercourse is not an indication of silence  of the type  referred  to  in Doyle.   e conclude the District Court did not abuse its discretion in permitting  the State's  impeachment line  of  questioning. We therefore hold the District Court did not err in allowing the State to use defendant's silence,  in reference to consensual sexual intercourse,  during his interrogation by the West Yellowstone police as evidence against defendant.

Issue IV

Did the District Court err in declining to review testimony with the jury at the jury's request?

During  deliberation,  the jury sent a written note to the District Court inquiring as follows:

> In reference to Officer Burns['] statements regarding the conversation with suspect in vehicle in  front of apartment --

> The question is "Did the defendant tell the officer that he and Betsy had a conversation to the effect that" he (the defendant) could either sleep on the bed or on the couch and she on one or the other[?]

14

Upon receiving this request, the court consulted with counsel and inquired of their positions. The court's answer to the jury's inquiry read, "In the exercise of discretion the [c]ourt has determined that it would be inappropriate to respond to the question you have asked."

Defendant argues the District Court abused its discretion by not responding to the jury's question. Defendant sets out portions of Officer Burns' testimony which speak to the jury's inquiry. Defendant contends the District Court committed reversible error by disallowing that portion of Officer Burns' testimony to be replayed for the jury during its deliberations as requested. Defendant further argues the District Court erred when it failed to give to the jury the instructions set forth in State v. Henrich (1994), 268 Mont. 258, 267, 886 P.2d 402, 408, which specifically deals with requests from the jury about witness testimony.

Section 46-16-503(2), MCA, refers to the jury's conduct after its retirement.

> 46-16-503. Conduct of jury after retirement--advice from court.
> (2) After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

The State argues, and we have consistently held, that the decision to replay testimony to the jury, or to refuse a request by the jury to do so, lies within the sound discretion of the district court. Henrich, 886 P.2d at 407; State v. Evans (1993), 261 Mont.

508, 511, 862 P.2d 417, 418; State v. Mayes (1992), 251 Mont. 358, 374, 825 P.2d 1196, 1206; State v. Harris (1991), 247 Mont. 405, 416-17, 808 P.2d 453, 460; State v. Ulstad (1990), 246 Mont. 102, 104, 802 P.2d 1260, 1262. We will review a district court's decision to allow or disallow a jury's request to replay trial testimony to determine if the district court abused its discretion. Henrich, 886 P.2d at 407.

After consulting counsel, the District Court commented, "almost any time you respond to a question from the jury, you're flirting with an error in the case." The District Court noted Officer Burns' direct testimony was interrupted by other testimony. He was brought back to the witness stand to complete his direct examination, and to further testify under cross-examination followed by redirect examination; thus, complicating reiteration of his testimony. The court recognized the dangers of emphasizing the testimony of one witness over another, as well as repeating portions of testimony out of context. We, therefore, conclude the District Court did not abuse its discretion in denying the jury's request.

We hold the District Court did not err in declining to review testimony with the jury at the jury's request.

## Issue V

Did the District Court err in defendant's sentencing?

Defendant was sentenced to the Montana State Prison for a period of twenty years, with five years suspended. He was ordered to complete the sexual offender treatment program, classified as

16

being a dangerous offender, ordered to register as a sex offender, and required to pay restitution to the West Yellowstone Police Department and the Crime Victims' Compensation Bureau of the State of Montana in the amount of $285.00.

Defendant contends the District Court, in setting his sentence, failed to consider statutory requirements set forth in § 46-18-101(3), MCA. Defendant further contends the sentence is cruel and unusual punishment under the Eighth Amendment to the United States Constitution in that it is excessive punishment; and, the court has denied defendant equal protection of the laws under the Fifth and Fourteenth Amendments of the United States Constitution.

The State argues § 46-18-101(3), MCA, does not require the District Court to specifically identify each criterion in the sentencing order, but requires sentences to be based "primarily" on the criteria listed. District courts are required only to specifically state, in open court and in the written judgment, the reasons for a sentence. Sections 46-18-102 and -115(5), MCA. The State asserts the court properly set forth, in both open court and written judgment, the reasons it imposed such sentence.

In State v. Cope (1991), 250 Mont. 387, 399, 819 P.2d 1280, 1287, we stated:

> We review sentences for legality only. State v. Hurlbert (1988), 232 Mont. 115, 756 P.2d 1110. The standard of review on sentence legality is whether the district court abused its discretion. State v. Lloyd (1984), 208 Mont. 195, 199, 676 P.2d 229, 231. We find no such abuse here, since [defendant's] sentence is well within the statutory limits. Questions of sentencing equity, on the other hand, are to be presented to the Sentence Review

17

Division. Lloyd, 676 P.2d at 231. If [defendant] wishes to pursue his equity argument, he may do so in the Sentence Review Division.

The above statement applies to these circumstances as well. The sentence is within the guidelines set forth in § 45-5-503(2), MCA, and is, on its face, neither excessive nor cruel. The District Court properly set forth its reasons for the sentence at the hearing and in its judgment; and those reasons did not manifest an abuse of discretion

We, therefore, hold that the District Court did not err in defendant's sentencing.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

18

August 8, 1995

<u>CERTIFICATE</u> OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

WATSON & WATSON
502 South 19th Avenue
Bozeman, MT 59715

HON. JOSEPH P. MAZUREK, Attorney General
Cregg W. Coughlin, Assistant
Justice Bldg.
Helena, MT 59620

Mike Salvagni, County Attorney
Martin Lambert, Deputy
Law & Justice Center
615 S. 16th Ave.
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy