DA 09-0347

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 446N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSEPH LEWIS GAUSE,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 07-140
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joseph Lewis Gause, (self-represented); Deer Lodge, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Mardell Ployhar,
Assistant Attorney General, Helena, Montana

          George H. Corn, Ravalli County Attorney; T. Geoffrey Mahar,
Deputy County Attorney, Hamilton, Montana

                    Submitted on Briefs:  November 4, 2009

                              Decided:  December 29, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 We have determined to decide this case pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Self-represented Appellant Joseph Lewis Gause (Gause) appeals from his convictions by a jury in the Twenty-First Judicial District Court, Ravalli County, of three counts of sexual intercourse without consent. Gause was sentenced to 40 years in the Montana State Prison with 20 years suspended, on each of the three counts, to be served concurrently. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On August 18, 2007, 19-year-old Leslianne Mackey (Mackey) attended a party at the home of her boyfriend, Joe Beardslee (Beardslee). Mackey had started drinking prior to attending the party, and the record is unclear as to when she arrived. Eight to ten people were at Beardslee's home, some of whom were playing a drinking game, while loud music played.

¶4 Mackey testified at trial that she drank shots of Jack Daniel's at the party and became highly intoxicated. Mackey's friend, Samantha Haas (Haas) assisted Mackey to walk down the hall to Beardslee's bedroom in order to go to bed. Mackey removed her clothing, Hass tucked her into bed, shut off the light, and left the bedroom door open only a crack.

¶5     Gause arrived at the party at about bar closing time. Mackey had gone to bed 45 minutes to an hour before Gause arrived. The party moved outside as Beardslee began grilling hamburgers. Gause asked where Mackey was and one of the guests informed him that she was passed out in Beardslee's bedroom. Gause stated that he was going inside the house to get a beer, went inside and disappeared for 15 to 20 minutes.

¶6     Mackey testified she was awakened by the pain of being bitten on her vagina. Mackey initially believed it was Beardslee who was in bed with her, but as he was uncharacteristically rough with her, she asked what he was doing. The assailant did not respond or speak to her. It was dark, and Mackey could not identify Gause. She testified that the man moved his head back and forth, down at her crotch, then up by her face, and that she believed he was trying to avoid being recognized. He bit her vagina, breasts and inner thighs. The man had vaginal, oral and anal intercourse with Mackey. Mackey stated that when he began anal intercourse, she screamed and kicked him off of her. She testified she was not amenable to having anal intercourse, something Beardslee would have been aware of.

¶7     Beardslee testified that he was barbecuing hamburgers when he looked through the kitchen window and saw Gause come from the hallway and walk into the kitchen. He described Gause as having a strange, panicky look on his face, and that Gause quickly turned around and went back down the hallway. Beardslee testified that he wondered if Gause was sick from drinking too much. Beardslee testified he flipped the hamburgers and went inside to see what was going on. Beardslee walked past the bathroom, noted Gause was not there, and proceeded toward his bedroom. Beardslee heard Mackey call

3

him, saying: "Go get Joe." As he walked into the bedroom he observed Gause lying on the bed talking to Mackey. Mackey was wrapped in a blanket, in a fetal position in the corner.

¶8     Beardslee testified that he asked Gause, "[w]hat the fuck are you doing?" Gause responded, "[o]h, she was calling you," and left the room. Mackey told Beardslee that she thought it had been Beardslee in bed with her, and that Gause had touched and hurt her.

¶9     Beardslee became angry and confronted Gause. Gause said their first names were the same, and asked, "[w]hat's the big deal?" Beardslee picked Gause up, threw him down into the yard, and when Gause got up, Beardslee struck him, kicked him, and shoved him to his vehicle.

¶10     Sarah Lyons (Lyons) testified that Mackey was sobbing uncontrollably, unable to catch her breath, and was so hysterical that Haas finally forced Mackey to focus directly on Haas's face. Mackey was finally able tell them what Gause had done to her. Lyons testified she could not take hearing any more and needed something to busy herself, so she cleaned off the bed and put Mackey's clothes and the sheets in the washing machine. She also testified there was semen on the sheets.

¶11     Beardslee returned to the house and Haas and Lyons left the bedroom to allow Mackey and Beardslee to talk. After talking with Mackey, Beardslee got into his truck and went looking for Gause. Beardslee admits that he threatened Gause in a cell phone conversation, and Gause finally agreed to come back to Beardslee's house.

4

¶12 When Gause arrived at the house, Beardslee admits he hit Gause, grabbed him, dragged him down the hall, threw him into Beardslee's bedroom, and forced Gause to apologize to Mackey. While Gause apologized to Mackey, he failed to specifically admit to anything. Beardslee grabbed Gause, again assaulted him, and Gause left the premises.

¶13 Again, Mackey became hysterical. Haas helped Mackey into the shower to rinse the semen off her body. Lyons found clean sheets, made the bed, and put Mackey back into bed. Haas testified that she gave Mackey a cigarette, and Lyons asked Beardslee for a sleep aid for Mackey, which he provided.

¶14 Later that day, Beardslee accompanied Mackey to the First STEP Resource Center where Mackey was examined for rape. Physician's Assistant Karin Johns (Johns) examined Mackey and testified that she observed bruises on Mackey's as well as a fissure laceration of her rectum which was tender to the touch. Johns testified she summarized the incident, as "[s]exually assaulted at a party at her boyfriend's house on 8-19-07 at 3:00 a.m. after 'passing out.' Vaginal and rectal penetration with penis and fingers." Johns testified the injuries were consistent with blunt force trauma to the anus and penetration of the vagina. Johns also explained that bite marks are frequently not visible 16 or more hours after they are inflicted, and that after bathing, any physical evidence of semen would likely not be present.

¶15 The morning of August 19, 2007, Gause's mother contacted law enforcement to report that her son had been assaulted. Gause made inconsistent statements to law enforcement officers, but did not testify at the trial. He admitted to a detective that he went into the bedroom and kissed, fondled and licked Mackey. However, he denied

5

penetration occurred, and that throughout the events, his pants were zipped, buttoned and belted. Gause acknowledged that Mackey was responsive to him because she thought he was Beardslee, but also claimed that Mackey knew who he was, and consented to the sexual activity. Gause stated that Mackey made the rape allegation because Beardslee was given a misdemeanor citation for assaulting Gause.

¶16 The State gave timely notice of intent to introduce evidence of other crimes, wrongs or bad acts committed by Gause. Specifically, Gause was convicted of misdemeanor sexual assault in Ravalli County in 2003 for assaulting an adolescent female who awoke with her pants pulled down and Gause on top of her. After the victim's mother found Gause sleeping on the floor next to the victim's bed, she installed a lock on the victim's door. While Gause temporarily resided with another family, the adolescent female woke up twice one night to discover Gause groping her as he kneeled by her bed. Gause's counsel did not object to the introduction of this evidence, explaining that he believed it was admissible.

¶17 In the present case, Gause's counsel moved for a directed verdict on Counts I and III. The District Court denied the motion on the basis that Mackey's testimony established the elements of both offenses. The jury convicted him of the three counts of sexual intercourse without consent. Gause appeals.

## ISSUES PRESENTED FOR REVIEW

¶18 We rephrase the issues presented on appeal as follows:

¶19 *1. Did the District Court err in allowing the State to commit prosecutorial misconduct?*

6

¶20 *2. Did Gause receive ineffective assistance of counsel (IAC)?*

¶21 *3. Did the District Court err in failing to grant a directed verdict on Counts I and III due to the lack of sufficient evidence to convict Gause?*

¶22 *4. Did the District Court err in admitting Beardslee's testimony?*

¶23 *5. Did the District Court err in failing to award Gause correct jail credit?*

¶24 *6. Did the District Court err in levying public defender fees against Gause?*

## STANDARD OF REVIEW

¶25 We review the sufficiency of the evidence to support a conviction by viewing the evidence in a light most favorable to the prosecution, and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Haser*, 2001 MT 6, ¶ 18, 304 Mont. 63, 20 P.3d 100 (citations omitted). We review a District Court's evidentiary rulings for an abuse of discretion. *State v. Osborne*, 1999 MT 149, ¶ 14, 295 Mont. 54, 982 P.2d 1045.

## DISCUSSION

¶26 Gause has failed to make a showing of prosecutorial misconduct. M. R. App. P. 12(1)(f) requires that the argument contain the contentions of the appellant, the reasons and citations to authorities, statutes and pages of the record. Such failure is fatal to the argument.

¶27 Counsel did not object to the introduction of evidence of prior wrongs, and the record reflects that counsel received timely notice. We will not address issues raised for the first time on appeal. *State v. Mackrill*, 2008 MT 297, ¶ 47, 345 Mont. 469, 191 P.3d 451. Gause's other claims of IAC are not record based and may not be reviewed on

7

appeal. Those issues are best presented in a petition for postconviction relief where a record may be developed.

¶28 Gause maintains that there was insufficient evidence to convict him in the absence of physical evidence, such as the presence of semen. After viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Graves*, 272 Mont. 451, 457-58, 901 P.2d 549 (1995). Furthermore, as we stated in *State v. Shields*, 2005 MT 249, ¶ 18, 328 Mont. 509, 122 P.3d 421, "[d]irect evidence of one witness who is entitled to full credit is sufficient proof of any fact." *Shields*, ¶18 (citing *State v. Gladue*, 1999 MT 1, ¶ 38, 293 Mont. 1, 972 P.2d 827).

¶29 Next, Gause contends that the District Court erred in allowing Beardslee's testimony into evidence on the basis that it was inadmissible hearsay, and that Beardslee was not credible. Gause did not object to the testimony and thereby waived the right to argue this issue on appeal. Moreover, credibility of a witness is within the purview of the jury. *State v. Vandersloot*, 2003 MT 179, ¶ 18, 316 Mont. 405, 73 P.3d 174.

¶30 Gause argued below for 143 days of jail credit, while the original presentence investigative report recommended awarding 122 days. He now contends that he was entitled to 152 days credit. However, by arguing for 143 days, and having been granted that credit, Gause has waived this argument.

¶31 Finally, there is no record of any objection to the assessment of a public defender fee. A specific hearing was held to determine the amount and, as indicated, Gause's

counsel did not contest that amount. We refuse to address an issue that was not raised before the district court and properly preserved for appeal. *Mackrill*, ¶ 47.

¶32 We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provides for memorandum opinions. It manifest on the face of the briefs and the record before us that sufficient evidence supports the convictions and that the District Court correctly applied the law.

¶33 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ BRIAN MORRIS
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE