No. 99-110

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 101

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROBERT SETTERS,

Defendant and Appellant.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Tammy K. Plubell, Assistant Montana Attorney General, Helena, Montana; Deborah Kim Christopher, Lake County Attorneys Office, Polson, Montana

Submitted on Briefs: March 2, 2000

Decided: June 12, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Robert Setters (Setters) was convicted in the District Court for the Twentieth Judicial District, Lake County, on a charge of tampering with public records or information. Setters had also been charged with theft by accountability for benefits received under various public assistance programs, but that charge was dismissed pursuant to a plea agreement. Setters appeals the District Court's order requiring him to pay restitution to the Department of Public Health and Human Services (DPHHS) in connection with the dismissed charge. We reverse.

¶2 The issues on appeal are:

¶3 1. Whether the District Court erred in requiring Setters to pay restitution.

¶4 2. Whether the District Court properly considered Setters' ability to pay when it established the amount of restitution.

¶5 3. Whether the District Court erred in assessing a penalty in addition to restitution.

¶6 Because we hold in issue 1 that the District Court exceeded its statutory authority by ordering Setters to pay restitution for a dismissed count, it is unnecessary for us to address the question in issue 2 of Setters' ability to pay said restitution or the question in issue 3 regarding the civil penalty.

## Factual and Procedural Background

¶7 Setters is a Vietnam veteran who was determined by the Veterans Administration (VA) to be suffering from post traumatic stress disorder (PTSD) and, as a result, is 100% disabled and unable to obtain gainful employment. As a result of the PTSD disability determination, Setters received over $100,000 in back pay in 1995 and continues to

receive $2,368 per month in veteran's disability benefits, subject to cost of living adjustments. Setters now lives at the family home in Arlee with his wife and four of his five children. Setters claims that during the period his wife received the public assistance at issue here, he did not reside with his family.

¶8 From July of 1989 through November of 1995, Setters' wife applied for and received various forms of public assistance including Food Stamps, Aid for Families With Dependent Children (AFDC), and Medicaid, totaling approximately $93,000. Several individuals in the community of Arlee expressed their concerns to local authorities regarding the public assistance received by the Setters, precipitating an investigation by the Lake County Attorney's office. These individuals alleged that Setters was in fact living with his wife in Arlee and that the amount of public assistance being paid to Setters' family was improper. Of the $93,000 in public assistance received by Setters' wife, Deborah, $73,689.16 was later determined by the Montana Department of Justice Criminal Investigations Bureau (DOJ) to be overpayment.

¶9 Pursuant to the DOJ investigation, Setters was charged by information in August 1997, with the offense of accountability for theft, a common scheme, under §§ 45-2-302(3) and 45-6-301(4)(a), MCA. The State alleged that Deborah "purposely or knowingly obtained or exerted unauthorized control" over public assistance benefits when she claimed that Setters did not reside in her home resulting in higher payments to her than she was entitled. Setters pleaded not guilty to the charge. The State also filed charges against Deborah, but dismissed those charges with prejudice in a subsequent plea agreement with Robert.

¶10 The case proceeded to trial in January 1998. After a two-day trial, the jury indicated that they were hopelessly deadlocked. The District Court declared a mistrial.

¶11 In an amended information filed in September 1998, the State again charged Setters with the offense of accountability for theft, a common scheme, and added the charge of tampering with public records or information, a felony, under § 45-7-208(1), MCA. This unrelated charge stemmed from Setters' 1996 application for a Montana liquor license, wherein he stated that he had indeed lived with his wife in Arlee for the past 11 years.

¶12 Setters admitted his guilt on the tampering charge, while continuing to maintain his innocence on the charge of accountability. Consequently, as part of a plea agreement, Setters agreed to plead guilty to the tampering charge in exchange for the State moving to

dismiss the charge of theft by accountability. The State also agreed that after judgment was entered against Setters, the State would dismiss with prejudice the charges pending against Setters' wife. In addition, the State agreed to recommend that the court impose a five-year sentence to Montana State Prison with all of that time suspended upon certain conditions, including that Setters make restitution to DPHHS. To that end, the plea agreement specified:

> The Defendant shall be responsible for restitution to the victim of the offense, the Department of Public Health and Human Services, in an amount to be determined at the sentencing hearing.

¶13 In the Pre-Sentence Investigation Report, the probation officer recommended imposition of a five-year suspended sentence and that Setters pay $20,025 in restitution at the rate of $334 per month. The probation officer noted that he had contacted the chief auditor and program compliance manager for DPHHS who had reported that while DPHHS would prefer to receive full restitution, they would be willing to compromise on an amount between $20,000 and $40,000.

¶14 At sentencing, the State recommended that Setters be ordered to pay full restitution in the amount of $73,698.16, plus a statutorily-prescribed 25% penalty in the amount of $15,040.54, for a total of $88,729.70, to be repaid within 58 months. The resultant monthly payment, including court costs, was approximately $1,539 per month.

¶15 The District Court concurred with the State and imposed a five-year suspended sentence and ordered Setters to pay restitution in the amount of $88,729.70. In both its oral pronouncement of sentence and its written judgment, the District Court explained that the reasons for the sentence are that it will provide restitution to the victim of the offense and it will afford Setters an opportunity for rehabilitation. Setters appeals and asks this Court to vacate the restitution requirement contained in the District Court's judgment.

## Standard of Review

¶16 This Court reviews a district court's imposition of a sentence for legality only. *State v. Hilgers*, 1999 MT 284, ¶ 6, 297 Mont. 23, ¶ 6, 989 P.2d 866, ¶ 6 (citing *State v. Richards* (1997), 285 Mont. 322, 324, 948 P.2d 240, 241). *See also State v. Rennick*, 1999 MT 155, ¶ 7, 295 Mont. 97, ¶ 7, 983 P.2d 907, ¶ 7; *State v. Graves* (1995), 272 Mont. 451, 463, 901 P.2d 549, 557. The standard of review of the legality of a sentence is whether the

sentencing court abused its discretion. *Rennick*, ¶ 7. In reviewing the court's findings of fact as to the amount of restitution, our standard of review is whether those findings are clearly erroneous. *Hilgers*, ¶ 6 (citing *State v. Perry* (1997), 283 Mont. 34, 36, 938 P.2d 1325, 1327).

## Issue 1.

¶17 *Whether the District Court erred in requiring Setters to pay restitution.*

¶18 Setters argues that the District Court exceeded its statutory authority by requiring him to pay full restitution for a crime which he did not admit committing and for which he was not convicted. He also argues that, contrary to the District Court's reasoning, the restitution condition does not have a rehabilitative purpose.

¶19 Relying on *State v. Blanchard* (1995), 270 Mont. 11, 16, 889 P.2d 1180, 1183, the State argues that an order of restitution for uncharged conduct is appropriate when it is bargained for in a plea agreement. The State contends that Setters has reaped the benefit of the dismissed charges against him and his wife and that he should not now be allowed to escape the obligations of his plea agreement.

¶20 A plea agreement is a contract which is subject to contract law standards. *State v. Keys*, 1999 MT 10, ¶ 18, 293 Mont. 81, ¶ 18, 973 P.2d 812, ¶ 18 (citing *State v. Butler* (1995), 272 Mont. 286, 291, 900 P.2d 908, 911). Under contract law, one party relinquishes some rights in reliance upon the promise of the other party. For that reason, this Court has consistently held that it will not assist a defendant in escaping the obligations of a plea agreement once the defendant has received its benefit. *Keys*, ¶ 19 (citing *State v. Nance* (1947), 120 Mont. 152, 166, 184 P.2d 554, 561).

¶21 Nevertheless, it is also well established that a district court's authority to impose sentences in criminal cases is defined and constrained by statute. *State v. Nelson*, 1998 MT 227, ¶ 24, 291 Mont. 15, ¶ 24, 966 P.2d 133, ¶ 24 (citing *State v. Wilson* (1996), 279 Mont. 34, 37, 926 P.2d 712, 714). Moreover, "a district court has no power to impose a sentence in the absence of specific statutory authority." *Nelson*, ¶ 24 (quoting *State v. Hatfield* (1993), 256 Mont. 340, 346, 846 P.2d 1025, 1029).

¶22 The statutory authority for the payment of restitution in this case is found at § 46-18-201(2), MCA (1997), which provides in pertinent part as follows:

In addition to any penalties imposed pursuant to subsection (1), if the court finds that *the victim of the offense* has sustained a pecuniary loss, the court shall require payment of full restitution *to the victim* as provided in 46-18-241 through 46-18-249. [Emphasis added.]

Hence, restitution is statutorily limited to the "victim" of the crime for which a defendant is convicted. *State v. Horton*, 2001 MT 100, ¶ 25, ___ Mont. ___, ¶ 25, ___ P.3d ___, ¶ 25 (citing *State v. Brown* (1994), 263 Mont. 223, 227, 867 P.2d 1098, 1101).

¶23 In *Horton*, a case similar to the case before us on appeal, the defendant was charged with felony driving under the influence (DUI), driving while his license was suspended or revoked, and felony nonsupport. The defendant owed over $47,000 in back child support. Pursuant to a plea agreement, Horton pleaded guilty to the traffic offenses in exchange for the State dismissing the felony nonsupport charge and, as part of the terms and conditions of his probationary sentence, Horton agreed to pay his child support arrearage. *Horton*, ¶¶ 8-11. At sentencing, the District Court ordered Horton to pay his monthly child support obligation along with an additional amount toward the arrearages as restitution. *Horton*, ¶ 14.

¶24 On appeal, Horton argued that since he pleaded guilty to certain traffic offenses and he did not plead guilty to, nor was he convicted of, the charge of felony nonsupport, there was no "victim" of the crimes for which he was convicted and to whom he could be ordered to pay restitution. *Horton*, ¶ 27. We agreed with Horton and held that the District Court's order in that case did not meet the statutory requirements for the imposition of restitution on a suspended sentence. *Horton*, ¶ 28.

¶25 Similarly, in the case *sub judice*, Setters was convicted of tampering with public records or information for giving false information to obtain a liquor license. He did not plead guilty to, nor was he convicted of, the charge of theft by accountability. Consequently, the "victim" of the crime for which Setters was convicted--tampering with public records or information--was not DPHHS and Setters cannot be ordered to pay restitution to DPHHS for the offense of theft by accountability--a crime for which he was not convicted.

¶26 Setters also argues that, contrary to the District Court's statement at the sentencing hearing and in its written judgment, the restitution condition does not have a rehabilitative purpose. We agree.

¶27 Section 46-18-202(1)(e), MCA (1997), provides that a sentencing court may impose any condition or restriction "reasonably related to the objectives of rehabilitation and the protection of the victim and society." However, in interpreting that provision in *State v. Ommundson*, 1999 MT 16, ¶ 11, 293 Mont. 133, ¶ 11, 974 P.2d 620, ¶ 11, we held that a sentencing limitation or condition must have some correlation or connection to the underlying offense for which the defendant is being sentenced. There is no such correlation or connection in this case between Setters' conviction on the tampering charge and ordering him to pay restitution to DPHHS for his alleged theft of public assistance benefits. Consequently, the District Court's order did not meet the statutory requirements for the imposition of restitution on a suspended sentence.

¶28 Accordingly, we hold that the District Court exceeded its statutory authority by ordering Setters to pay restitution for a dismissed count as a condition of his sentence. Hence, we reverse the determination of the District Court as to restitution and we order that portion of Setters' sentence vacated.

¶29 Reversed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

Justice Patricia O. Cotter specially concurs and dissents.

¶30 I concur with the Court's conclusion that a district court's authority to impose sentences in criminal cases is defined and constrained by statute, and I agree with the Court's conclusion that there was no "victim" of the crime of which Setters was convicted and to whom Setters could be ordered to pay restitution over objection. However, for the reasons set forth in my concurring and dissenting opinion in *State v. Horton*, 2001 MT 100 , ___ Mont.___, ___ P.3d ___ , I respectfully dissent from this Court's order striking

the restitution provisions from the District Court's Judgment and Order of Sentence.

¶31 As I proposed in *Horton*, I would remand to the District Court, with directions that the State be given the option of either accepting the sentence as amended by this Court, or, in the alternative, rescinding the plea agreement for failure of consideration. Should the State elect to rescind, the parties would be returned to their pre-plea agreement status, with Setters withdrawing his plea of guilty and all charges previously dismissed being reinstated. The State and Setters could thereafter either negotiate a new plea agreement or proceed to trial.

/S/ PATRICIA COTTER

Justice W. William Leaphart concurs in the foregoing special concurrence and dissent.

/S/ W. WILLIAM LEAPHART