DA 07-0541

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 300

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

EDWARD NESS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 06-118
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Robin A. Meguire; Attorney at Law; Great Falls, Montana

      For Appellee:

         Hon. Steve Bullock, Montana Attorney General; J. Stuart Segrest,
Assistant Attorney General; Helena, Montana

         Mitch Young, Lake County Attorney; Polson, Montana

Submitted on Briefs:  May 28, 2008

Decided:  September 10, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant Edward Ness (Ness) pled guilty to and was sentenced for Tampering With or Fabricating Physical Evidence, a felony, in violation of § 45-7-207, MCA (2005), in the Twentieth Judicial District Court, Lake County. Ness appeals only that portion of his sentence imposing $3,500 in restitution. We affirm.

¶2    The sole issue on appeal is whether the District Court erred by requiring Ness to pay restitution for funeral expenses as part of his sentence for tampering with evidence.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    In the early morning hours of July 1, 2006, Jami Sherman (Sherman) was involved in a single-car accident while driving under the influence of alcohol in Ronan, Montana. Sherman was thrown from her vehicle and was lying in a prone position on the roadway when Ness's vehicle struck and killed her. Ness fled the scene and went home, waking up his partner, Krista Orr (Orr), to tell her that he'd hit something with the car. Ness told Orr that he was concerned because of the number of emergency vehicles responding to the area.

¶4    After hearing news of Sherman's death the following morning, Ness and Orr changed the vehicle's turn signal lenses, which had been broken, disposed of the pieces of the broken lenses, and washed the vehicle. On July 28, nearly a month after Ness had run over Sherman, and after receiving two anonymous tips, police located Ness's vehicle and arrested him. Ness told police that he initially thought he had hit a cow in the roadway and that he does not stop when merely hitting a cow or other animals. Ness

stated that when he later realized that he had hit a person, he did not report the accident because he was afraid of the consequences.

¶5 Ness was charged with Tampering With or Fabricating Evidence, a felony. The Information alleged that Ness "tampered with evidence by washing a vehicle involved in a hit and run accident that resulted in the death of Jami Sherman." Ness entered an *Alford* plea to the charge pursuant to a plea agreement and acknowledged that he was a persistent felony offender. The Pre-Sentence Investigation report (PSI) adopted the plea agreement recommendation that Ness be sentenced to twenty years in the Montana State Prison as a persistent felony offender, and also recommended that Ness be required to reimburse the Montana's Victims of Crime Act program (VOCA) for the $3,500 the Fund had expended for Sherman's funeral expenses. The PSI noted that Sherman was the "primary victim in this case," and that the "secondary victims" were Sherman's parents and siblings because Ness had let them "suffer through the trauma of not knowing the circumstances of [Sherman's] death." At sentencing, defense counsel argued that Ness should not be ordered to pay restitution because funeral expenses were not authorized by statute.

¶6 The District Court sentenced Ness to the Montana State Prison for twenty years and ordered him to pay $3,500 for Sherman's funeral expenses. However, the District Court ordered Ness to pay the restitution to Sherman's parents, who had not paid for the

3

funeral expenses, rather than to VOCA, which actually paid for Sherman's funeral.[1] Ness only appeals the requirement that he pay restitution.

## STANDARD OF REVIEW

¶7      We review a sentence in a criminal case for legality to determine whether the sentence is within statutory parameters. *State v. Herman*, 2008 MT 187, ¶ 11, 343 Mont. 494, 188 P.3d 978.

## DISCUSSION

¶8      **Did the District Court err by requiring Ness to pay restitution for funeral expenses as part of his sentence for tampering with evidence?**

¶9      Ness argues the District Court erred by imposing restitution for Sherman's funeral expenses because there was no nexus or correlation between the crime for which he was convicted and the restitution imposed. He also argues that Sherman's family does not qualify as a "victim" under § 46-18-243(2)(a)(ii), MCA, which includes "a member of the immediate family of a homicide victim," because Sherman was not the victim of a homicide. The State responds that a loss need only be "related to" the crime to be reimbursable, and that a sufficient connection exists here. The State notes that it was actually VOCA which paid Sherman's funeral expenses, and that VOCA is included as a "victim" under the statute to the extent it has reimbursed a victim for "pecuniary loss." Section 46-18-201(5), MCA. Ness replies that VOCA did not, technically, "reimburse"

---

[1] The judgment states that Ness will be "responsible for restitution for the funeral expenses of the victim to Russ and Joan Sherman . . . in the amount of $3500.00, payable to the Department of Corrections Restitution . . . ."

4

anyone because it paid the funeral expense directly, and therefore the restitution to VOCA is not authorized under the statute.

¶10    Ness relies upon *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620; *State v. Horton*, 2001 MT 100, 305 Mont. 242, 25 P.3d 886, *overruled on other grounds*, *Herman*, ¶ 12; and *State v. Setters*, 2001 MT 101, 305 Mont. 253, 25 P.3d 893, for his correlation argument.  In those cases, we held that a sentencing condition must have "some correlation or connection to the underlying offense for which the defendant is being sentenced." *Ommundson*, ¶ 11; *Horton*, ¶ 28; *Setters*, ¶ 27.  According to Ness, his crime of tampering with evidence did not result in Sherman's death and cause her funeral expenses, so there is no correlation between his crime and the restitution imposed.

¶11    In *Ommundson*, we partially reversed the defendant's sentence because there was "no nexus between the requirement that Ommundson participate in a sex offender program and the charged offense of DUI." *Ommundson*, ¶ 12.  In *Horton*, we held that there was no connection between the defendant's conviction of DUI and the sentencing requirement that he pay child support as restitution.  *Horton*, ¶¶ 27-28.  In *Setters*, we reversed a restitution order pertaining only to an unrelated theft charge which had been dismissed pursuant to a plea agreement.  *Setters*, ¶ 25.[2]

¶12    In *State v. McIntire*, 2004 MT 238, 322 Mont. 496, 97 P.3d 576, we considered a condition in the defendant's burglary sentence requiring him to pay restitution for losses

---

[2] We clarified that the nexus requirement applied "to either the offense for which the offender is being sentenced, or to the offender himself or herself" in *State v. Ashby*, 2008 MT 83, ¶ 15, 342 Mont. 187, 179 P.3d 1164.

arising from his forgery, when the forgery counts had been dismissed as part of a plea agreement. While burglarizing his deceased neighbor's apartment, the defendant stole and later forged the victim's checks. Relying on *Horton* and *Sellers*, the defendant argued that restitution for those losses was inappropriate as they had not arisen from the burglary charge. We distinguished *Horton* and *Sellers*, reasoning that those cases involved dismissed charges "wholly unrelated to the charges to which the defendants pled guilty," *McIntire*, ¶ 17, whereas there was a "direct connection" between the burglary and the forgery losses at issue in that case. *McIntire*, ¶ 18.

¶13 Similar to Ness, the defendant in *State v. LaTray*, 2000 MT 262, ¶ 14, 302 Mont. 11, 11 P.3d 116, argued that courts could only impose restitution for losses that occurred as a "direct result" of an offense. At the conclusion of a high-speed chase, LaTray lost control of his car and rolled down a ditch. Responding officers called an ambulance and a tow truck for assistance. LaTray was convicted of driving under the influence of alcohol, driving without insurance, driving while a habitual traffic offender, leaving the scene of the accident, and criminal endangerment. Challenging the requirement to pay restitution for the ambulance and towing services, LaTray argued that, while other cars he hit were victims, neither the towing service nor the ambulance company qualified as victims of any of his offenses. *LaTray*, ¶¶ 2-6. However, we held that "classification of an individual as a victim—for the purpose of ordering restitution—does not depend on the individual's relationship to the elements of the crime for which the defendant is being sentenced." *LaTray*, ¶ 16 (citing *State v. Morgan*, 198 Mont. 391, 402, 646 P.2d 1177,

6

1183 (1982)). We further noted that "LaTray's conviction for criminal endangerment in no way limits restitution only to those he endangered." *LaTray*, ¶ 16. Rather, because LaTray's actions "created a situation in which ambulance and towing services were reasonably necessary," the expenses for these services resulted from his crime and were subject to restitution. *LaTray*, ¶ 22.

¶14 In *State v. Breeding*, 2008 MT 162, 343 Mont. 323, 184 P.3d 313, we reversed a portion of the defendant's restitution requirement for damages to a stolen vehicle. Noting that restitution must be ordered for losses which are "a result of the commission of the offense," *Breeding*, ¶ 13, we nonetheless concluded that there was "nothing in the record indicating that the charge against Breeding and the offense to which he pleaded guilty were based on any of the events that occurred prior to his suggesting that he and Seghetti drive the Jeep to California and his participating in that endeavor . . . ." *Breeding*, ¶ 16. The subject damage had occurred earlier. We thus reversed the order requiring Breeding to pay restitution for damages to the vehicle which occurred prior to and were not "based on" his involvement. *Breeding*, ¶¶ 16, 20.

¶15 Recently, in *State v. Perkins*, 2009 MT 150, 350 Mont. 387, 208 P.3d 386, the defendant was charged with felony criminal endangerment after his girlfriend's child was removed from the home where he and his girlfriend were residing pursuant to dependency and neglect proceedings. Upon his conviction, the defendant objected to paying child care expenses of $5,947 for the child's out-of-home care as restitution, arguing that those expenses were his girlfriend's responsibility. Citing *McIntire*, we

7

noted that the district courts have broad powers to impose reasonable requirements upon an offender and that § 46-18-202(1)(f), MCA, which allows a court to include "any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society," also provides a basis for restitution. *Perkins*, ¶ 12. We concluded that the district court did not err by finding a "sufficient connection" between the offense and the expenses. *Perkins*, ¶¶ 11, 13.

¶16 Here, the charge to which Ness pled guilty alleged that he had "tampered with evidence by washing a vehicle involved in a hit and run accident that resulted in the death of Jami Sherman." Ness was the driver of that vehicle and he acknowledged that he had struck Sherman. Ness's actions in striking Sherman created the evidence that he tampered with. Had he not struck Sherman, the charge of tampering with the evidence from that incident would not have arisen. Sherman died from the injuries she received when Ness struck her, and incurred funeral expenses.

¶17 Sherman's status as a victim for purposes of restitution "does not depend on [her] relationship to the elements of the crime for which the defendant is being sentenced." *LaTray*, ¶ 16 (citing *State v. Morgan*, 198 Mont. 391, 402, 646 P.2d 1177, 1183 (1982)). Restitution for Sherman's funeral expenses has "some correlation or connection to the underlying offense" for which Ness was sentenced. *Horton*, ¶ 28. The expenses are not "wholly unrelated" to Ness's crime. *McIntire*, ¶ 17. Ness's actions "created a situation in which [funeral expenses] were reasonably necessary." *LaTray*, ¶¶ 21-22. We conclude there is a "sufficient connection" between Sherman's funeral expenses and

8

Ness's crime, *Perkins*, ¶¶ 11-13, and that the expenses were "based on" Ness's involvement. *Breeding*, ¶ 16. Thus, there is a nexus or correlation between the crime and the restitution requirement.

¶18    Ness's second argument is that no one here qualifies as a "victim" under the statutes for purposes of receiving payment for Sherman's funeral expenses. As a preliminary matter, we agree with the State that the District Court's sentence mistakenly ordered restitution for Sherman's funeral expenses to be paid to Sherman's parents, when the evidence indicated that the expenses had already been paid directly by VOCA. Upon remand, the District Court's judgment should be amended accordingly to correct this technical error.

¶19    However, that does not resolve Ness's argument. Section 46-18-243(2)(a)(v), MCA, provides that VOCA is a "victim" for purposes of restitution only "to the extent that it has reimbursed a victim for pecuniary loss." Thus, there must be a primary "victim" for whom VOCA made payment before it can be deemed a "victim" for reimbursement purposes. Ness argues that Sherman, her estate, and her parents all fail to satisfy the statutory definition of "victim" under the crime with which he was charged, as Sherman was not a "homicide" victim. Section 46-18-243(2), MCA.

¶20    Section 46-18-201(5), MCA, provides that if a victim "has sustained a pecuniary loss," the sentencing judge shall require payment of full restitution to the victim. Likewise, § 46-18-241(1), MCA, provides that a sentencing court "shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained

9

pecuniary loss . . . ."[3] In *LaTray*, the defendant argued that neither the towing service nor the ambulance qualified as victims of any of the offenses of which he was convicted. At that time, § 46-18-241(1), MCA (1997), stated that a sentencing judge must require an offender "to make full restitution to any victim *of the offense* who has sustained pecuniary loss *as a result of the offense . . . .*" (emphasis added). LaTray argued that losses must be directly attributable to an offense in order to qualify. We rejected this argument, reasoning that:

> [a]dmittedly, application of § 46-18-241(1), MCA, requires some interpretation of just how remote a loss can be before it can no longer be considered to be "a result of the offense." However, the fact that the language is somewhat open does not imply that "direct" losses are the only ones that qualify.

*LaTray*, ¶ 14. In the 2003 Legislature, House Bill 220 was introduced and passed to, among other things, "address court opinions" concerning restitution. Laws of Montana, 2003, Ch. 272. The new law struck the language italicized in the above quote from § 46-18-241(1), MCA, eliminating the words requiring a victim to be a victim "of the offense" and the victim's loss to be "as a result of the offense." While we find no explanation in the legislative history for these specific revisions, we can only conclude from the language changes that the Legislature intended to broaden the definition of "victim" and to relax in some fashion the requirement that victim losses be a "result" of the offense. We rather think that the Legislature sought to follow our course in *LaTray* by requiring

---

[3] The parties do not dispute that Sherman's funeral expenses constitute "pecuniary loss."

restitution for persons who are affected by a defendant's actions, such as the towing service involved in that case.

¶21 Had Ness not run over Sherman, there would have been no evidence to cover up. Sherman's funeral expenses result from Ness's actions. Given this nexus and the broadening of the statutory language described above, we conclude that Sherman or her estate is a "victim" who has "suffer[ed] the loss of property, bodily injury, or death as a result of . . . the commission of an offense." Section 46-18-243(2)(a)-(2)(a)(i)(A), MCA. Further, VOCA, having paid for these expenses, is entitled to reimbursement under § 46-18-243(2)(a)(v), MCA. Although the District Court named Sherman's parents, Sherman or her estate is the primary victim and is eligible for reimbursement from VOCA, who is the secondary victim.

¶22 Ness points out that VOCA did not actually "reimburse" anyone for Sherman's funeral expenses because it paid the funeral home directly, but payment of Sherman's expenses was nonetheless a reimbursement to her or her estate. We will not interpret the statute to a require a straw man in the form of Sherman's estate to make payment to the funeral home in order to qualify for reimbursement by VOCA. The law does not require idle acts. Section 1-3-223, MCA (2005). Accordingly, VOCA was entitled to restitution pursuant to § 46-18-243(2)(a)(v), MCA.

¶23 Affirmed and remanded for entry of an amended judgment in accordance herewith.

/S/ JIM RICE

11

We concur:


/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS