**FILED**

August 28 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0338

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 186

CITY OF BILLINGS,

      Plaintiff and Appellee,

  v.

DARLA EDWARD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 10-673
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade M. Zolynski, Chief Appellate Defender, Sarah Chase Rosario,
Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Brent Brooks, Billings City Attorney, Curtis Bevolden, Deputy City
Attorney, Billings, Montana

Submitted on Briefs:  April 4, 2012

Decided:  August 28, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Darla Edward (Edward) appeals from the Order Affirming Restitution Obligation (Order), entered by the Thirteenth Judicial District Court of Yellowstone County, Montana, following a collision between her car and a bicyclist and an ensuing Municipal Court trial and sentencing.

¶2     We affirm.

## ISSUES

¶3     Edward raises four issues on appeal.  We restate the issues as follows:

¶4     1.  Did the District Court err when it held that the jury determined causation?

¶5     2.  Does substantive evidence in the record support the amount of restitution awarded?

¶6     3.  Were Edward's constitutional rights to a jury and a fair trial violated?

¶7     4.  Did Edward receive ineffective assistance of counsel?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8     On May 26, 2010, Edward exited a beauty salon in Billings, Montana.  As Edward drove out of the parking lot, Karen Zaso (Zaso) was riding her bicycle on the sidewalk, going southbound against traffic.  According to two witnesses, a collision occurred between Edward's car and Zaso's bicycle.  Joseph Desson (Desson), one of the witnesses, testified that Edward's car hit Zaso's bicycle and that Zaso was thrown into the street in front of his vehicle.  Desson said he stopped abruptly to avoid running over Zaso, and was then rear-ended by the vehicle behind him.  Lynsey Hagan (Hagan), the other witness and a passenger in the vehicle behind the vehicle that rear-ended Desson's

vehicle, also testified that Edward's vehicle hit Zaso's bicycle. According to Hagan, Edward did not appear to know she had hit someone, and she looked as if she was going to run Zaso over after Zaso fell to the ground. Hagan testified that when Zaso got up, Edward said something to Zaso and then drove away. Hagan memorized Edward's license plate number and gave it to the police.

¶9 A Billings police officer (Officer) responded to the accident and spoke to the witnesses at the scene. The Officer's report stated that Edward's vehicle pulled out of the location of the salon and hit a bicyclist on the sidewalk, knocking the bicyclist into the northbound driving lane of the street and causing another accident. According to the report, Zaso was transported by ambulance to the Billings Clinic Emergency Room.

¶10 Later that same day the Officer spoke to Edward. Edward denied colliding with the bicyclist, though she saw the rear-end vehicle collision occur when Desson abruptly stopped his vehicle. After she watched the collision, Edward said she first saw Zaso when Zaso walked her bicycle around the front end of Edward's vehicle. Though Edward knew an accident had occurred, she believed she was not required to remain at the scene as she did not think she was involved in the accident. The Officer examined Edward's vehicle that same day and found no evidence of impact on the vehicle. The Officer later testified that a collision of this sort would not necessarily be expected to leave marks on the vehicle.

¶11 The Officer cited Edward for failure to remain at an accident involving personal injury (Failure to Remain), a criminal violation under § 61-7-103, MCA (2009), and failure to immediately notify authorities of an accident resulting in personal injury or at

3

least $500 in property damage (Failure to Notify), a criminal violation under § 61-7-108, MCA (2009). The Officer did not issue a citation to Zaso, though under §§ 24-602 and -609 of the City Code of Billings, it is a misdemeanor for anyone other than authorized law enforcement personnel to ride a bicycle on a sidewalk within a business district, pursuant to § 61-8-608, MCA (2009). Billings City Code (Mont.) §§ 24-602 and -609 (current through August 9, 2012).

¶12     A jury trial was held in Billings Municipal Court (Municipal Court) on November 4, 2010, and Edward was convicted of both criminal charges. The jury heard testimony from Edward, Zaso, Desson, Hagan, and the Officer. During deliberations, the jury was initially deadlocked. Without objection, the court delivered an *Allen*[1] charge. After further deliberations, the jury asked to re-hear some testimony. The court denied the jury's request and told the jury it needed to return a unanimous verdict that evening or it could return in the morning to continue deliberating. The jury finished deliberating before dinnertime and returned a guilty verdict on both counts.

¶13     Meanwhile, in October 2010, Edward's insurer, State Farm Insurance (State Farm), paid Zaso $21,866.58 for her medical expenses. Zaso also sought reimbursement for the following items: $10 for the accident report, $515 for travel to and from court, $64.13 for lodging when appearing for court, $678.98 for new glasses, $425 for the security deposit for her apartment, $28.57 for Neosporin, gauze pads, and other medical supplies, $4,080 in lost wages, $125 for ink and paper, $15.98 for postage costs, and

---

[1] *Allen v. U.S.*, 164 U.S. 492, 17 S. Ct. 154 (1896). "An *Allen*-instruction is a supplemental jury instruction given when jurors are apparently deadlocked." *State v. Norquay*, 2011 MT 34, ¶ 33, 359 Mont. 257, 248 P.3d 817.

$150 for her personal time. State Farm declined to pay these costs, as it had already paid Zaso for medical supplies as well as a new bicycle, helmet, and clothing.

¶14 Hearings were held for sentencing and for purposes of establishing restitution. Edward moved to dismiss the restitution hearing, arguing that she had not been found guilty of actually causing the accident, that causation must be tried before a jury, and that Zaso was not entitled to restitution. The Municipal Court rejected Edward's motion. On her conviction of Failure to Remain, Edward was sentenced to one year in jail with all but thirty days suspended; the thirty days were suspended on the condition that she complete one hundred hours of community service, pay $4,148.60 in restitution to Zaso, and pay court costs and fees.

¶15 On February 1, 2011, Edward formally appealed the Municipal Court's restitution order to the District Court. She did not challenge the convictions, suspended sentence, or community service requirement. Edward argued that the restitution obligation should be reversed on four grounds: (1) the absence of a causal connection between the offense and the damage; (2) the causation standard of § 46-18-243(2)(a), MCA (2009), was not met; (3) she should not be liable for damages Zaso could not recover in a civil suit; and (4) the amount of restitution was not based on substantive evidence. The State of Montana (State) responded on behalf of the City of Billings, arguing that the causation standard was met. After the matter was fully briefed, the District Court affirmed the Municipal Court's restitution obligation, finding it reasonable upon application of the restitution standards set forth in *State v. Ness*, 2009 MT 300, ¶ 20, 352 Mont. 317, 216 P.3d 773. The court found that the evidence in the record substantiated the restitution award.

5

¶16    Edward appeals.

## STANDARD OF REVIEW

¶17    We review a sentence of less than one year of actual incarceration for both legality and abuse of discretion. *State v. Breeding*, 2008 MT 162, ¶ 10, 343 Mont. 323, 184 P.3d 313; *State v. Herman*, 2008 MT 187, ¶ 11, 343 Mont. 494, 188 P.3d 978. A criminal sentence is generally reviewed for "legality to determine whether the sentence is within statutory parameters." *Ness*, ¶ 7. "A sentencing court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Breeding*, ¶ 10.

¶18    We review the appropriate measure of restitution for correctness. *State v. Johnson*, 2011 MT 116, ¶ 13, 360 Mont. 443, 254 P.3d 578. We review a district court's findings of fact regarding the amount of restitution to determine whether they are clearly erroneous. *Johnson*, ¶ 13. A finding of fact is "clearly erroneous if [it is] not supported by substantial evidence." *Breeding*, ¶ 11. "Substantial evidence is 'evidence that a reasonable mind might accept as adequate to support a conclusion.' " *Johnston v. Palmer*, 2007 MT 99, ¶ 26, 337 Mont. 101, 158 P.3d 998.

¶19    "We invoke plain error review sparingly, on a case-by-case basis, according to narrow circumstances, and by considering the totality of the case's circumstances." *State v. Wilson*, 2011 MT 277, ¶ 16, 362 Mont. 416, 264 P.3d 1146.

¶20    "A claim of ineffective assistance of counsel presents mixed questions of law and fact that we review de novo." *Herman*, ¶ 10.

## DISCUSSION

¶21 *Issue One: Did the District Court err when it held that the jury determined causation?*

¶22 Edward argues on appeal that the District Court and the Municipal Court erred when they concluded that Edward *caused* Zaso's accident, as the elements of the charges of Failure to Remain and Failure to Notify establish no more than the fact that Edward was *involved* in an accident. Thus, she argues, causation of the accident was never determined and the court was therefore without authority to award Zaso restitution. Edward maintains that the jury should have been required to determine causation prior to the court awarding restitution, and that because no causal connection exists between the two offenses and the damage to Zaso, the restitution award was improper. Edward also argues that Montana's law of comparative negligence entitles Edward to have a jury determine contributory negligence of the parties before restitution is assessed.

¶23 The State asserts that the jury did determine causation when it found Edward guilty of the two crimes, and therefore a sufficient causal connection existed between Edward's criminal conduct and Zaso's loss to support the restitution award. The State also argues that Edward raises the comparative negligence claim for the first time on appeal.

¶24 Edward was convicted of Failure to Remain, pursuant to § 61-7-103, MCA, which states in pertinent part:

> (1) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close to the accident as possible but shall then return to and in every event remain at the scene of the accident until the driver has fulfilled the requirements of 61-7-105. Each stop at the scene of

7

the accident must be made without obstructing traffic more than is necessary.

Edward was also convicted of Failure to Notify under § 61-7-108, MCA, which provides:

> The driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of $500 or more shall immediately by the quickest means of communication give notice of the accident to the local police department if the accident occurs within a municipality, otherwise to the office of the county sheriff or the nearest office of the highway patrol.

¶25 The Municipal Court ordered Edward to pay Zaso restitution. Section 46-18-241(1), MCA (2009), provides:

> (1) As provided in 46-18-201, a sentencing court shall, as part of the sentence, require an offender to make full restitution to any victim who has sustained a pecuniary loss, including a person suffering an economic loss. The duty to pay full restitution under the sentence remains with the offender or the offender's estate until full restitution is paid, whether or not the offender is under state supervision. If the offender is under state supervision, payment of restitution is a condition of any probation or parole.

For purposes of this statute, "victim" means "a person who suffers loss of property, bodily injury, or death as a result of the commission of an offense." Section 46-18-243(2)(a)(i)(A), MCA (2009). "Pecuniary loss" is defined as:

> (a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to funeral and burial or crematory services;
> (b) the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct;

8

(c) future medical expenses that the victim can reasonably be expected to incur as a result of the offender's criminal conduct, including the cost of psychological counseling, therapy, and treatment; and

(d) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

Section 46-18-243(1), MCA (2009).

¶26 We have previously stated that "a causal relation between the offender's criminal conduct and the pecuniary loss is the touchstone for determining whether a person or entity is a victim entitled to restitution." *State v. Brownback*, 2010 MT 96, ¶ 20, 356 Mont. 190, 232 P.3d 385 (citing *Breeding*, ¶ 13). We will not hold an offender accountable for restitution for offenses he or she did not commit. *Breeding*, ¶ 13. Rather, "a sentencing condition must have 'some correlation or connection to the underlying offense for which the defendant is being sentenced,' " and the nexus requirement applies "to either the offense for which the offender is being sentenced, or to the offender himself or herself." *Ness*, ¶¶ 10, 11 n. 2 (citing *State v. Ashby*, 2008 MT 83, ¶ 15, 342 Mont. 187, 179 P.3d 1164).

¶27 A victim who "suffer[s] loss of property 'as a result of' the offender's criminal conduct," is entitled to restitution. *Brownback*, ¶ 20. We said in *Ness* that when applying § 46-18-241(1), MCA, some interpretation is required to determine "just how remote a loss can be before it can no longer be considered to be 'a result of the offense.' " *Ness*, ¶ 20 (quoting *State v. LaTray*, 2000 MT 262, ¶ 14, 302 Mont. 11, 11 P.3d 116). We noted in *Ness* our understanding that the Legislature intended that restitution be required "for persons who are affected by a defendant's actions." *Ness*, ¶ 20. The language of

§ 46-18-241(1), MCA, "does not imply that 'direct' losses are the only ones that qualify." *Ness*, ¶ 20 (quoting *LaTray*, ¶ 14).

¶28 Applying the restitution standards as set forth in *Ness*, the District Court found that the Municipal Court did not abuse its discretion in awarding restitution to Zaso. The District Court reasoned that neither of the offenses for which Edward was convicted included as an element that the defendant must *cause* injury to the victim. The District Court found the testimony from the neutral third parties "compelling," and concluded there was overwhelming evidence against Edward. The District Court observed that a sentencing court shall require an offender to make full restitution to any victim who has sustained pecuniary loss, including that which a person could recover against the offender in a civil action "arising out of the facts or events constituting the offender's criminal activities." Section 46-18-243(1)(a), MCA; *State v. Kalal*, 2009 MT 103, ¶ 8, 350 Mont. 128, 204 P.3d 1240.

¶29 Citing *Breeding*, Edward argues that because the jury did not find that she *caused* the accident, it was error for the court to require her to pay restitution. This case is easily distinguishable from *Breeding*. In *Breeding*, the defendant was convicted of theft of a motor vehicle and ordered to pay restitution for damage to the car. *Breeding*, ¶¶ 4, 5, 8. Breeding appealed, arguing that the order of restitution against him was improper because the damage to the vehicle was caused by another individual *before* Breeding became involved in the subsequent theft of the car. *Breeding*, ¶¶ 1, 3, 5. We agreed, finding no statutory authority for imputing to Breeding the damage caused by a third

10

party. *Breeding*, ¶ 19. Here, by contrast, the court concluded based upon the evidence that Edward was directly involved in the accident.

¶30 It is undisputed that Zaso incurred losses that arose out of the facts or events of the accident, as substantiated by the evidence in the record and as required by § 46-18-243(1)(a), MCA. The question is whether Zaso's losses were "a result of the commission of an offense," as required by § 46-18-243(2)(a)(i)(A), MCA, and the associated provision for restitution, § 46-18-241(1), MCA. The Municipal Court found the evidence provided to the jury, including the testimony of four of the five witnesses, was sufficient to allow it to determine that Zaso's losses resulted from Edward's commission of the offenses. This testimony included that of Desson and Hagan, both of whom stated they saw Edward's vehicle hit Zaso's bicycle. Given the strength of this testimony, we cannot conclude that the court erred in determining that Zaso's losses resulted from Edward's commission of the offenses.

¶31 Edward also argues on appeal that Zaso broke the law by riding her bicycle on the sidewalk, in violation of § 24-602 of the City Code of Billings, which provides that "[n]o person shall ride a bicycle on a sidewalk within a business district except authorized law enforcement personnel." Billings City Code at §§ 24-602 and -609. She therefore posits that Zaso was negligent per se, and that her negligence contributed to her damages. Edward maintains that Zaso's negligence should have been placed before the jury for its determination of comparative fault of the parties. She argues that the amount of restitution should thereafter have been adjusted to account for Zaso's comparative negligence.

11

¶32     The problem is that Edward raises this argument for the first time on appeal.  In both the Municipal Court at the restitution hearing and on appeal to the District Court, Edward argued that the court lacked the authority to impose *any* restitution order against her because the offenses of which she was convicted did not state as an element that she actually caused the accident.  In other words, she argued that no causal connection existed between her conduct and the claims for restitution.  She did not raise the issue of Zaso's negligence or comparative fault in either court; she does so for the first time on appeal.  We generally decline to consider new issues on appeal.  *State v. Longfellow*, 2008 MT 343, ¶ 19, 346 Mont. 286, 194 P.3d 694; *State v. West*, 2008 MT 338, ¶ 16, 346 Mont. 244, 194 P.3d 683.  This fact distinguishes this case from *City of Whitefish v. Jentile*, 2012 MT 185, ¶ 28, ___ Mont. ___, ___ P.3d ___, in which we concluded that Jentile had raised the negligence of the other party as a defense at the time of the restitution hearing.

¶33     We conclude that the lower courts did not err in awarding restitution to Zaso, and that the award was legal and not an abuse of discretion.

¶34     *Issue Two:  Does substantive evidence in the record support the amount of restitution awarded?*

¶35     At the restitution hearing on December 21, 2010, the Municipal Court ordered Edward to pay $4,148.60 in restitution to Zaso for lost wages, eyeglasses, a copy of the accident report, and mileage costs.  The District Court affirmed the award, and Edward appeals on the basis that the record lacks substantive evidence to support the amount.

Edward argues that Zaso failed to provide substantial evidence of her employment, hours and salary, and that she lost her job as a result of the accident, among other things.

¶36 Both parties were represented by counsel at the restitution hearing. Counsel for the City of Billings presented evidence in support of the request for restitution. Edward's counsel did not present any evidence, though she did cross-examine Zaso about some of the evidence and the amounts requested. The Order from the District Court specifically lists the evidence that was admitted at the hearing and which was before the Municipal Court when it decided to award $4,148.60 in restitution.[2]

¶37 Under Section 46-18-242, MCA (2009), proof of pecuniary loss may be made either by way of affidavit submitted with the presentence report, or by way of evidence of the victim's loss at the time of sentencing. Edward cites *State v. Coluccio*, 2009 MT 273, ¶ 45, 352 Mont. 122, 214 P.3d 1282, *overruled in part on other grounds*, *State v. Kirn*, 2012 MT 69, ¶ 8 n. 1, 364 Mont. 356, 274 P.3d 746, for the assertion that assumptions and speculative calculations are insufficient upon which to make findings of fact. The findings of fact in the instant case were based on the evidence presented at the hearing, including Zaso's sworn testimony. Zaso's sworn testimony satisfied the statutory

---

[2] The District Court Order states that:

> [T]he following were admitted into evidence at the hearing: a letter written by Zaso to State Farm, Edward's insurance company; a letter from State Farm to Zaso; various medical bills from several providers, including Heights Eyecare, Daniel J. Farren, O.D., Billings Clinic, and Stetson Physical Therapy; an invoice from The Spoke Shop and an exhibit documenting the bicycle's value; a police report; a letter wherein Zaso obtained a job in Butte, MT; a notice to pay rent or vacate, the bottom of which included handwriting documenting Zaso's lost wages at Denny's; a receipt for a hotel room; and gas receipts.

requirement and was not based on speculation. We conclude there was sufficient substantive evidence to support the restitution award.

¶38 *Issue Three: Were Edward's constitutional rights to a jury and a fair trial violated?*

¶39 Edward argues that her fundamental constitutional rights to procedural and substantive due process were violated when she was deprived of her property without a jury determining causation and apportionment, when the City of Billings did not cite Zaso for violating the law, and when the Municipal Court administered the *Allen* charge.

¶40 Our conclusion in Issue One is dispositive of these causation and comparative negligence arguments. As reasoned above, the sentencing court was not required to order the jury to determine causation or comparative negligence under the facts and circumstances of this criminal case, whether for the purpose of awarding restitution or to satisfy Edward's constitutional rights to a jury and a fair trial. Because causation is not an element of Edward's criminal convictions and Edward did not properly preserve the comparative negligence defense, we decline to apply plain error review in this case and on these grounds. Furthermore, a mere assertion that constitutional rights are implicated or that a manifest miscarriage of justice would result if review of the claimed error did not occur is insufficient to implicate the plain error doctrine. *Wilson*, ¶ 16. Edward's claim also rests upon what she calls the State's "arbitrary charging decisions." It is not up to this Court to determine who should be charged with what violation. We decline to apply plain error review under these circumstances.

14

¶41    After the jury indicated it might be deadlocked, the Municipal Court gave the

following instruction:

> The judicial process assigns tasks to the various units.  It is the task of the witnesses to testify truthfully as they recall the facts.  It is the task of the lawyers to prepare the case for final submission to the trier of the facts, the jury.  It is the task of the Judge to preside, instruct you as to the law and to rule on the admissibility of the evidence.  It is the task of the jury to decide the case.  The ultimate responsibility of the jury is to render a verdict in this cause.  You are not partisan nor are you advocates in this matter but you are the judges; you are the judges of the facts; it is you and you alone that can render a verdict in this case.  There is no reason to believe that any other 6 men and women could possess any more ability, intelligence and courage to do the ultimate task assigned to a jury under the American system of justice.
>
> The final test of the quality of your service will be in the verdict which you return to this Court.  It is only by rendering a verdict in this cause that you can make a definite contribution to efficient judicial administration as you arrive at a just and possible verdict.  We have never asked, as a matter of fact we have instructed you, that you should not surrender your honest convictions in this matter for the mere purpose of returning a verdict or solely because of the opinion of other jurors, but this does not mean that you should avoid a task assigned to you of rendering a verdict in this cause.

Edward argues that her fundamental constitutional rights to procedural and substantive

due process were violated when the Municipal Court gave this *Allen* charge[3] to the jury,

as she alleges it was "coercive and improper" and "encouraged the minority to surrender

their convictions to provide a unanimous verdict."  Citing *Norquay*, Edward argues that

providing the instruction led to a manifest miscarriage of justice, as it did not allow the

jurors "to hold steadfast to their opinions."

---

[3] This jury instruction is the Montana criminal pattern jury instruction for a potentially hung jury, and is also known as the *Allen* instruction.  Mont. Pattern Jury Instr. Crim. 1-121 (2009).

15

¶42 Under the plain error doctrine's two-part test, Edward must show that the alleged error implicates a fundamental right and that failing to review it "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Wilson*, ¶ 28. Instead, Edward merely asserts that "dynamiting the jury [with the *Allen* charge] resulted in a conviction where there [otherwise] would have been a hung jury," and a hung jury would have precluded a restitution hearing. We find insufficient evidence in the record to support this assertion. We have previously stated that "a mere assertion that constitutional rights are implicated or that failure to review the claimed error may result in a manifest miscarriage of justice is insufficient to implicate the plain error doctrine." *State v. Gunderson*, 2010 MT 166, ¶ 100, 357 Mont. 142, 237 P.3d 74.

¶43 We have repeatedly upheld application of the *Allen* charge jury instruction. *Norquay*, ¶ 36; *see State v. Bieber*, 2007 MT 262, ¶ 70, 339 Mont. 309, 170 P.3d 444; *State v. Cline*, 170 Mont. 520, 540, 555 P.2d 724, 736 (1976). Though the language of the instruction was changed in 2011 by *Norquay*, there is no evidence that the instruction was inappropriately applied at the time it was given, and neither party objected to the court giving the instruction. *Norquay*, ¶ 43. Edward did not carry her requisite burden, and we therefore decline to review the application of the *Allen* charge for plain error.

¶44 *Issue Four: Did Edward receive ineffective assistance of counsel?*

¶45 Finally, Edward argues on appeal that her trial counsel provided ineffective assistance by failing to argue that the restitution hearing violated Edward's rights to due process, a fair trial, and an impartial jury, and that Zaso did not fit the statutory definition

16

of a victim and was therefore not entitled to restitution. In her reply brief, Edward also argues that if this Court finds that Edward did not preserve for appeal the issue of comparative negligence, then her counsel was ineffective for failing to do so. The State argues that these claims should not be reviewed on direct appeal as they are not record-based. If these claims are reviewed on direct appeal, the State asserts that Edward has neither demonstrated that her counsel was ineffective nor that she was prejudiced by her counsel's performance.

¶46 We generally address only record-based claims for ineffective assistance of counsel on direct appeal. *Herman*, ¶ 15. "A claim is record-based if 'the record fully explain[s] *why* counsel took the particular course of action.' " *Herman*, ¶ 15 (quoting *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340). "[I]f there is 'no plausible justification' for counsel's conduct," we may address a claim that is not record-based on direct appeal, though these situations are "relatively rare." *Herman*, ¶¶ 15-16 (quoting *State v. Jefferson*, 2003 MT 90, ¶ 50, 315 Mont. 146, 69 P.3d 641; *State v. Kougl*, 2004 MT 243, ¶ 15, 323 Mont. 6, 97 P.3d 1095).

¶47 Edward's claim of ineffective assistance of counsel is not record-based, as the record does not explain *why* Edward's counsel proceeded in the manner to which Edward objects. Because the crucial question of *why* is not answered by the record, Edward's claim is not record-based and thus not appropriate for direct appeal.

**CONCLUSION**

¶48 Based on the foregoing, we affirm the Order of the District Court.

/S/ PATRICIA COTTER

17

We concur:

/S/ JIM RICE
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS